# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHA NGUYEN TRAN,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>    Respondents. | Case No.: 3:25-cv-02391-BTM-BLM<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF NO. 1] |

    Pending before the Court is Kha Nguyen Tran's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated below, the Court GRANTS the petition and orders Tran's immediate release from custody.

**A.    Background**

    Immigration and Customs Enforcement ("ICE") officers took Tran into custody on June 18, 2025. (ECF No. 9, Ex. 2 ("I-213 R."), at 3). They did so to execute a January

2007 removal order to Vietnam, the country of Tran's birth. Tran was admitted to the United States in 2003 as a permanent resident alien. Tran was ordered removed because of his 2006 conviction for assault with a deadly weapon when he was nineteen years old. (I-213 R., at 2).

Tran was in ICE custody in 2007 for about six months but was released because Vietnam would not accept him. (ECF No. 1 ("Pet."), at 2). The following year, the United States and Vietnam signed a repatriation agreement. *See* Agreement on the Acceptance of the Return of Vietnamese Citizens, U.S.-Viet., Jan. 22, 2008, T.I.A.S. No. 08-322. ICE detained Tran again to remove him under the new agreement. (ECF No. 1, Ex. A ("Tran Decl."), ¶ 4). Tran was in custody for about six months, when he was again released because the government was not able to remove him to Vietnam. (*Id.* ¶ 5). Tran has lived in the United States thereafter under an Order of Supervision without violation for over fifteen years. (*Id.* ¶ 6).

On September 15, 2025, Tran petitioned the Court for a writ of habeas corpus on three grounds. First, he claimed his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and 8 U.S.C. § 1231. (ECF No. 1, at 6). Second, he claimed that he was unlawfully denied an interview when he was re-detained, violating ICE's own regulations, specifically 8 C.F.R. § 241.13, and his Due Process rights. (*Id.* at 12). Third, he claimed that the Government was likely to unlawfully remove him to a third country without notice and an opportunity to be heard. (*Id.* at 14). Tran also filed a motion for a temporary restraining order. (ECF No. 3). The Court granted the motion in part and enjoined the Government from removing Petitioner to a third country. (ECF No. 6).

Since the filing of the petition, the Government has obtained travel documents for Tran's removal to Vietnam. (ECF No. 12). Tran has stipulated that claims one (*Zadvydas*) and three (removal to a third country) are moot. (ECF No. 14). The Court agrees and dismisses as moot counts one and three. The Court rules on the second claim that Respondents violated Tran's Due Process rights by violating their regulations.

B.     Discussion

      i.     **The Court has jurisdiction.**

The Court has long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). "In doing so the courts carry out . . . the 'historic purpose of the writ,' namely, 'to relieve detention by executive authorities without judicial trial.'" *Zadvydas*, 533 U.S. at 699 (quoting *Brown v. Allen*, 344 U.S. 443, 533 (1953) (Jackson, J., concurring in result)).

The Respondents argue that 8 U.S.C. § 1252(g) "removes district court jurisdiction" over this case. (ECF No. 9, at 2). But the Supreme Court has consistently rejected "the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (quoting *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999). Tran is not challenging Respondents' decision to execute a removal order, which would bar this Court's review. He only contests his detention resulting from "violations of [Respondents'] mandatory duties under statutes, regulations, and the Constitution." (ECF No. 11, at 15). This Court thus has jurisdiction to determine the lawfulness of Petitioner's detention. *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

      ii.     **Petitioner was unlawfully detained.**

Tran argues that his continued detention is in violation of 8 C.F.R. § 241.13(i)(2) and (3), which provide:

> (2) *Revocation for removal*. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed

circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . .

>　　(3) *Revocation procedures*.  Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be [sic] removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

The Respondents have failed to follow these provisions in three material respects. First, subsection 241.13(i)(2) requires ICE to determine that the detainee is likely to be removed in the reasonably foreseeable future "on account of changed circumstances." Respondents assert that they have determined that there are changed circumstances and that Tran will be removed to Vietnam in the reasonably foreseeable future.  While that may certainly be the case now, § 241.13(i)(2) requires that this determination is made before the removable alien has had his release revoked.  *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56971 (Nov. 14, 2001) (codified at 8 C.F.R. pts. 3, 241) ("[I]n any case where, based on a change of circumstances, the Service later makes a determination that there is a significant likelihood that the Service *subsequently* will be able to remove the alien . . . in the reasonably foreseeable future, the custody provisions of § 241.4 will again apply. *In that event*, the Service may return the alien to detention in connection with the removal . . . ." (emphasis added)).  As in *Rokhfirooz*, there is no record here that such a determination was made on or before the revocation of Tran's release on June 18, 2025. *Rokhfirooz v. LaRose*, 2025 WL 2646165, at *3 (S.D. Cal. Sept. 15, 2025).  Therefore, in *Rokhfirooz*, Judge Huie ordered the alien's release.

Even if ICE made a determination on the likelihood of Tran's removal before revoking his release, it would not have been "on account of" changed circumstances.

Indeed, the Respondents did not even submit a request to Vietnam for travel documents until September 18, 2025—three months after taking Tran into custody. The Respondents provide no evidence of an actual determination of changed circumstances that justified the initial revocation of Tran's release.

Second, subsection 241.13(i)(3) requires that the alien "will be notified of the reasons for revocation of his or her release." There was no written notice given to Tran. The Respondents assert that written notice is not required and the Department of Homeland Security's I-213 form sufficed. Yet the record is absent as to whether Tran was given a copy of the I-213 at or reasonably close to his arrest. Furthermore, the I-213 form merely states that Tran's arresting officers informed him that "he was being placed under arrested [sic] based on his final order of removal." (I-213 R., at 3). The Court disagrees with the Respondents that the I-213 form satisfies the due-process notification requirement of § 241.13(i)(3). The I-213 memorializes that Tran was advised that he was arrested based on his previous order of removal but does not state that he was advised of the reasons supporting the revocation of release.

The Court holds that the notice must be in writing and contain all the reasons for the revocation of the alien's release. The immigration regulation provides that the alien be afforded "an opportunity to respond to the reasons for revocation *stated in the notification*." 8 C.F.R. § 241.13(i)(3) (emphasis added). In the stressful context of an alien's arrest and revocation of release, in order to give effectual notice of the reasons for renewed detention, due process requires written notice so that the alien can prepare for the post deprivation informal interview. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("This [Due Process] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). The regulation recognizes that by noting that the alien can respond to the reasons "stated in the notification." *Id.* That is a clear indication that the regulation

requires a written notification. The Respondents failed to provide that here.[1]

Third, subsection 241.13(i)(3) requires, after the alien's detention for revocation of release, a *prompt* initial informal interview at which Tran could respond to the reasons for revocation. Although "[t]he fundamental requisite of due process of law is the opportunity to be heard," Tran was not provided that opportunity. *Grannis v. Ordean*, 234 U.S. 385, 394 (1914); *see Alexander v. U.S. Parole Com.*, 721 F.2d 1223, 1227–28 (9th Cir. 1983) ("The very purpose of notice and a hearing is to permit an accused the opportunity to present a defense or mitigating factors.").

A government agency is required to follow its own regulations. *United States ex rel. Accordi v. Shaughnessy*, 347 U.S. 260, 268 (1954). This is especially so when the regulation provides for procedural due process. *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."). The Respondents violated 8 C.F.R. § 241.13(i)(2) and (3) in the three ways set forth above. As other judges in this district have held, when the immigration authorities are holding an alien in custody in violation of these immigration regulations, the writ of habeas corpus must issue. *Rokhfirooz*, 2025 WL 2646165, at *4; *Truong v. Noem*, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025); *Ngo v. Noem*, No. 25-cv-02739 (S.D. Cal. Oct. 23, 2025).

The Respondents note that Vietnam has issued a travel document and will accept Tran. They point out that they will have a plane reservation for Tran to depart in about two weeks. Therefore, they argue, the Court should not issue the writ. But Tran is being presently detained on the June 18th revocation and not based on the new circumstances.

---

[1] During oral argument, the Respondents claimed that § 241.13(i)(3) does not mandate written notice because other subsections of the regulation use the term "written notice." They argue that the expression of "written notice" elsewhere excludes a written notice requirement here. But that principle of interpretation does not overcome the plain text that the reasons for an alien's revocation are "stated in the notification." 8 C.F.R. § 241.13(i)(3).

Thus, as held in the Southern District cases of *Truong*, 2025 WL 2988357, and *Ngo*, No. 25-cv-02739, the writ should issue without prejudice to the remedies that the Respondents may otherwise have. In this case, since Tran has had an apparently unblemished record in following the conditions of supervision for fifteen years and has family here including a United States citizen minor daughter, the Respondents may exercise their discretion to allow him to say goodbye to his family, settle his affairs, and report for his removal.

### C. Conclusion

The petition for a writ of habeas corpus is **GRANTED** on the second claim and the writ is **ISSUED**. The Respondents shall immediately release Tran from custody on the June 18, 2025, revocation and arrest. Tran shall comply with all the conditions in effect before his June 18, 2025, revocation of release. The parties shall file a statement as to the satisfaction of the writ within twenty-four (24) hours of the entry of this order.

**IT IS SO ORDERED.**

Dated: October 27, 2025

Honorable Barry Ted Moskowitz
United States District Judge